IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PORCHA ALEXANDER, Individually and
as Administratrix for the Estate of
SHARON LAVETTE ALEXANDER                                    PLAINTIFF

VS.                              CASE NO. 4:18-CV-0046 BSM

PULASKI COUNTY, ARKANSAS,
A Public Body Corporate and Politic,
DOC HOLLADAY, In His Official
Capacity as the Sheriff of Pulaski
County, Arkansas, EDDIE TURNER and
JACKETHA LATTIMORE, In Their
Individual and Official Capacities as
Sheriff Deputies for Pulaski County,
Arkansas, TURN KEY HEALTH CLINICS LLC,
LINDA MCCRAW, LPN                                          DEFENDANTS

<u>AMENDED COMPLAINT</u>

I.

<u>Introduction</u>

The plaintiff, Porcha Alexander, as Administratrix of the Estate of Sharon Lavette Alexander, brings this action pursuant to Arkansas' Wrongful Death Law, which is codified at Ark. Code Ann. § 16-62-101 *et seq*., on behalf of herself and the beneficiaries of Sharon Lavette Alexander, deceased.  This cause of action seeks to recover damages against the defendants pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, in that the defendants were deliberately indifferent to the serious medical needs of the decedent, which proximately caused the death of Sharon L. Alexander.  This cause of action is also being brought seeking damages for medical negligence.  This cause of action is also being brought pursuant to 42 U.S.C.S. § 1983.

1

II.

Jurisdiction

1.      Jurisdiction of this Court is being invoked pursuant to 28 U.S.C.S. § 1343.  Relief is pursuant to 42 U.S.C.S. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution.  The Court is also asked to assume supplemental jurisdiction over the plaintiff's state law claims.

2.      This is also an action seeking declaratory relief pursuant to 28 U.S.C.S. § 2201 to declare the rights and other relations between the parties and for damages.

III.

Parties

3.      The plaintiff Porcha Alexander is the duly appointed, qualified and acting administratrix of the Estate of Sharon L. Alexander, deceased, pursuant to an order of the court heretofore entered by the Circuit Court of Pulaski County, Arkansas, appointing plaintiff as the Administratrix of her mother's estate.  *See* In Re Sharon Lavette Alexander, Pulaski County Circuit Court No. 60PR-17-2187.  Pursuant to Ark. Code Ann. § 16-62-101, *et seq*., this action can be and is being brought by the plaintiff, the duly appointed Administratrix of the decedent's estate on behalf of herself and the decedent's beneficiaries.

4.      The defendant Pulaski County, Arkansas, is a public body corporate created by the General Assembly for the State of Arkansas pursuant to Ark. Code Ann. § 14-14-501.  Pulaski County, Arkansas owns and operates a sheriff department to keep the peace and order of said county.  Furthermore, said county owns and operates a regional detention facility for the purpose of housing pre-trial and post-trial detainees.

5.     The defendant Doc Holladay, is the duly elected sheriff of Pulaski County, Arkansas, and is charged with the responsibility of training his deputies, and has the overall executive responsibility of the Pulaski County Regional Detention Facility.

6.     The defendant Eddie Turner at the time of the decedent's death, was employed in the capacity as jailer/deputy for the Pulaski County Sheriff's Department.  The defendant Eddie Turner is being sued in his individual and official capacity.

7.     The defendant Jacketha Lattimore at the time of the decedent's death, was employed in the capacity as jailer/deputy for the Pulaski County Sheriff's Department.  The defendant Jacketha Lattimore is being sued in her individual and official capacity.

8.     The defendant Turn Key Health Clinics LLC., is a foreign limited liability company, doing business in the State of Arkansas as Turn Key Health Clinics, providing medical services to the inmates of the Pulaski County Regional Detention Facility, on a contractual basis.

9.     The Agent for Service of Process for Turn Key Health Clinics LLC., is Incorp Services Inc., 4250 Venetian Lane, Fayetteville, Arkansas 72703.

10.     According to the corporate statement of Turn Key Health Clinics, its corporate offices are located in Oklahoma City, Oklahoma, and its "leadership team is more knowledgeable and experienced with operating medical programs for jails in our region than any other company in the correctional health industry.  Or team is experienced with managing the day-to-day medical operations in jails with inmate populations ranging from 45 to 2500 inmates."

11.     Turn Key Health Clinics states that it provides "comprehensive health programs that include medical, mental health, and dental programs just like our competitors."

12.     Turn Key Health Clinics further states that "[i]ndividuals associated with the corrections industry are aware of the potential difficulties associated with recruiting and retaining

quality personnel. . . Turn Key Health Clinics is unmatched in our region with the ability to recruit and retain dependable staff for the correctional environment. . . With such a high emphasis on recruiting locally, Turn Key Health Clinics has established exemplary retention rates with dependable, professional medical staff."

13.     The defendant Linda McCraw, LPN, at all times herein mentioned, was employed by the defendant Turn Key Health Clinics, operating as a Licensed Practical Nurse.

IV.
Facts

14.     Sharon L. Alexander was arrested on December 13, 2016, and charged with the offense of robbery, in violation of Ark. Code Ann. § 5-73-501.

15.     On December 13, 2016, at approximately 7:20 p.m., Ms. Alexander was at Target Department Store, located at 4000 McCain Blvd., in North Little Rock, Arkansas.

16.     When Ms. Alexander was attempting to leave the store, she was allegedly attempting to steal $234.16 in clothing, and was apprehended by Troy Ellis, who was working loss prevention for Target.

17.     Apparently Ms. Alexander got in a struggle with the loss prevention personnel while she was attempting to leave the store, and turned a simple misdemeanor theft into a robbery charge, which is a Class B Felony.

18.     Ms. Alexander was arrested by Officer J. Yates of the North Little Rock Police Department, and was eventually transported to the Pulaski County Regional Detention Facility.

19.     Ms. Alexander was given a court appearance for the date of December 14, 2016, at 8:30 a.m..

20.     Ms. Alexander was booked into the Pulaski County Regional Detention Facility at 8:25 p.m., on the date of December 13, 2016.

21.     Upon information and belief, Turn Key Health Clinics LLC acquired the contract to provide medical services to the Pulaski County Regional Detention Facility, with a contract start date of December 1, 2016.

22.     When an inmate is booked into the jail, representatives of Turn Key Health Clinics conduct a medical screening of the inmates, in order to determine any health issues that the inmate is presenting with.

23.     When Ms. Alexander presented to the Pulaski County Regional Detention Facility, she filled out a Detainee Information Sheet, which indicated that she was 100% disabled, and suffered from sickle cell anemia, asthma, and rheumatoid arthritis.  This document further indicated that Ms. Alexander suffers from "chronic asthma."

24.     There was a document called "Incident/Unusual Occurrence Report," which was filled out by T. Moore, who is believed to be employed by Turn Key Health Clinics.

25.     According to the "Incident/Unusual Occurrence Report," it was noted that when Ms. Alexander was booked into the Pulaski County Regional Detention Facility, she was found to be in possession of a Ventolin inhaler.[1]

26.     It was noted that Ms. Alexander was found to be in possession of this Ventolin inhaler during the book-in process on the date of December 13, 2016, at 9:20 p.m..

---

[1] It is assumed that this was documented as an "unusual occurrence," because Ms. Alexander was supposed to have been searched by the arresting officer, and others before coming into the jail, and even searched after she came into the jail, but was still able to have this inhaler in her possession.  It is also possible that Ms. Alexander advised the arresting officer and others that due to her chronic asthma condition, she needed to retain possession of her inhaler in case of an asthma attack.

27.     According to Nurse T. Moore, she performed a medical assessment of Ms. Alexander, and found her oxygen saturation or Spo2 level was at 97%.

28.     Nurse Moore further noted in the "Incident/Unusual Occurrence Report," that the deputies took Ms. Alexander's Ventolin inhaler, and stored it, and then placed Ms. Alexander in a holding cell.

29.     Nurse Moore then noted that Ms. Alexander was seen holding her breath, and that she started hyperventilating.

30.     Nurse Moore stated that she got Ms. Alexander to calm down, and start breathing right, and again checked her oxygen saturation level, and found it to be at 99%, and her BPM was at 114.

31.     According to the records of the Pulaski County Regional Detention Facility, Ms. Alexander was moved to C-Unit, and placed in Cell 221, at 1:00 a.m. on December 14, 2016.

32.     In a report that was filled out by Deputy Eddie Turner, which according to Major M. Briggs was backdated, Turner had just finished serving lunch at 11:15 a.m. on the morning of December 14, 2016.

33.     Deputy Eddie Turner noted that Ms. Alexander stepped out of her cell and stated that she needed to speak to him.

34.     Deputy Turner noted that Ms. Alexander had to be assisted down the stairs, by three (3) fellow inmates: a) Hailey Spicer, b) Paradise Deanna Williams, c) Charolda Darnette Walton.

35.     Deputy Turner noted that Ms. Alexander was being held by her arms by two (2) inmates, and the third had her by the waist, assisting her down the steps in C-Unit.

36.     Deputy Turner states that he grabbed a chair for Ms. Alexander to sit in, which she did.

37.     Deputy Turner stated that Ms. Alexander indicated that she suffers from sickle cell, had a cold (believed to meant that she was stating she was cold), that she was shaking, and had been throwing up.

38.     Deputy Turner noted that he contacted the medical infirmary, and spoke with who he thought was Nurse Mitchell, but later turned out to be a Nurse Cook.

39.     Deputy Turner told Nurse Mitchell [Cook] what he had been told by Ms. Alexander, apparently requesting that someone needed to come and check on her.

40.     Deputy Turner notes that he was told that someone would be down to check on Ms. Alexander.

41.     Around 11:45 a.m., during the morning of December 14, 2016, Nurse McCraw arrived in C-Unit.

42.     Deputy Turner asked Linda McCraw, LPN if she was coming in response to his call to the medical infirmary, to which she replied "no."

43.     Deputy Turner then notes that Nurse McCraw took a seat next to the deputy station.

44.     According to Deputy Turner, he then tells Nurse McCraw what he had just been told by Ms. Alexander.

45.     Deputy Turner states that he told Nurse McCraw that in response to talking with Ms. Alexander, he contacted the medical infirmary, and explained the situation to Mitchell [Cook], and that he thought that Nurse McCraw was coming in response to his call.

46.     Deputy Turner further states that he told Nurse McCraw that Ms. Alexander stated that she was cold, suffers from sickle cell, and had been throwing up.

47.     Deputy Turner stated that Nurse McCraw told him that there was nothing she could do, and that Ms. Alexander needs to "drop a sick call."

48.     Deputy Turner stated that he then walked over to Ms. Alexander, and told her that Nurse McCraw stated that there was nothing that she could do, and that Ms. Alexander needed to "write a sick call," and place it in the box, and someone would check on her the next day.

49.     At this time, Deputy Turner noted that the three (3) inmates then took Ms. Alexander back upstairs.

50.     According to Paradise Williams, she filled out a "sick call" for Ms. Alexander, and turned it in.

51.     The "sick call" was dated December 14, 2016, and it had Ms. Alexander's name on it, stating that she was sick, she was cold, that she needed her asthma pump, and needed her meds "ASAP please."

52.     During the morning of December 14, 2016, Ms. Alexander spoke with her husband Glenroy Charles, telling him that she was being denied her meds, and that they would not allow her to have her asthma pump.

53.     Mr. Charles mentioned to his wife, that he was doing what he could to get her out, and for her to hold on.

54.     Mr. Charles then contacted the Pulaski County Jail, and spoke with Sgt. Cherry Comic, and told her that his wife was being denied her medications, and her asthma pump, and that she needed them.

55.     Mr. Charles even offered to bring the pump to the jail, but was told by Ms. Comic, that Ms. Alexander will be given what she needs.

56.     During the evening of December 14, 2016, at approximately 6:45 p.m., Ms. Alexander spoke with her husband again, telling him that she has not gotten her asthma pump, and that she did not believe that she was going to make it.

57.     Mr. Charles was able to discern that his wife was in distress having difficulty breathing.  Mr. Charles again tried to assure his wife that everything would be alright.

58.     Nya Hamilton was placed in the cell with Sharon Alexander.

59.     A few minutes after being placed in the cell, Ms. Hamilton noticed that Ms. Alexander started convulsing, and was wheezing loudly.

60.     Ms. Hamilton started banging on the cell door, in an effort to get the attention of Jailer Jacketha Lattimore.

61.     For several minutes, Deputy Lattimore ignored Ms. Hamilton, and continued her rounds of locking other doors.

62.     After several minutes, Deputy Lattimore came to the cell of Ms. Alexander and Ms. Hamilton, and found Ms. Alexander in a state of distress, breathing heavily.

63.     Deputy Lattimore then called Ms. Alexander's name, but she did not respond.

64.     At 7:58 p.m., on the date of December 14, 2016, Deputy Lattimore called a "Code Red – Medical Emergency."

65.     Several officers responded, including medical personnel.

66.     The medical personnel performed CPR on Ms. Alexander, but to no avail.

67.     Emergency Medical Technicians of the Metropolitan Emergency Medical Services (MEMS) arrived at the Pulaski County Regional Detention Facility, along with members of the Little Rock Fire Department, at approximately 8:08 p.m..

68.     Again, efforts to revive Ms. Alexander were not successful.

69.     Ms. Alexander was transported to the University of Arkansas for Medical Sciences (UAMS), where she was pronounced dead at 11:02 p.m..

70.     Ms. Alexander's body was sent to the Arkansas State Crime Laboratory, where an autopsy was performed.

71.     Dr. Jennifer Forsyth, the pathologist of record found the cause of death of Ms. Alexander to be Acute Asthma Exacerbation.

V.
Count One
Deprivation of Civil Rights

72.     The plaintiff incorporates by reference the allegations contained in paragraphs 1-71 of the plaintiff's complaint, and adopts each as if set out herein word for word.

73.     Ms. Alexander was a pre-trial detainee of the Pulaski County Regional Detention Facility.

74.     The defendants were well aware of the decedent's serious medical needs, knowing that she had a history of chronic asthma, and was dependent on her Ventolin inhaler.

75.     Nevertheless, the defendants took the decedent's Ventolin inhaler, and refused to provide her with a replacement, nor allowed her to retain possession of her own inhaler.

76.     During the morning of December 14, 2016, the decedent attempted to get help for her serious medical condition, but she was denied by both jail staff and the staff of Turn Key Health Clinics.

77.     Fellow inmates of the Pulaski County Regional Detention Facility attempted to get help for the decedent, by going as far as physically taking her to the guard station, and placing her in the presence of Nurse Linda McCraw, who saw that the decedent was in serious medical distress.

78.     Despite the fact that Nurse McCraw saw the decedent's condition, as well as Deputy Eddie Turner, they ignored her pleas for help, and refused to get the appropriate medical attention.

79.     Although Nurse Linda McCraw was well aware of the decedent's medical condition, and saw that she was in apparent distress, she simply advised Deputy Eddie Turner, to advise Ms. Alexander that there was nothing that Nurse McCraw could do for her, and that Alexander needed to "drop a sick call," and someone may get with her tomorrow.

80.     Once Nurse McCraw refused to get medical attention for Ms. Alexander, Deputy Eddie Turner had an obligation to report to his chain of command the problem that he was experiencing in getting help for Ms. Alexander, but he chose not to do so.

81.     Both Deputy Eddie Turner and Nurse Linda McCraw were deliberately indifferent towards the serious medical needs of Ms. Alexander, which resulted in her continued suffering, and ultimately led to her death.

82.     Pulaski County, Arkansas through its sheriff failed to see that its staff was properly trained to deal with the medical needs of its pre-trial detainees, and such failure to train amounted to deliberate indifference, in violation of the decedent's federally protected rights as secured by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

83.     Furthermore, Pulaski County through its sheriff failed to see that its staff was properly trained to deal with situations where the medical staff refused to provide medical treatment to its pre-trial detainees, and such failure to train amounted to deliberate indifference, in violation of the decedent's federally protected rights as secured by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

84.     The defendants' acts of deliberate indifference towards the decedent's serious medical needs, violated the decedent's rights to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and that said violations are enforceable pursuant to 42 U.S.C.S. § 1983.

85.     Upon information and belief, when Deputy Eddie Turner did a shift change, he presumably provided information to Deputy Lattimore regarding the medical situation of Sharon Alexander.

86.     Upon being provided with a briefing about the problems that Ms. Alexander was facing, Deputy Lattimore had a duty to check on Ms. Alexander, and to determine how she was doing.

87.     It is obvious that Deputy Lattimore failed to check on the condition of Ms. Alexander, despite knowing her serious medical condition.

88.     Inmate Nye Hamilton tried to get help for Ms. Alexander by banging on the cell door, attempting to inform Deputy Lattimore about the medical crisis that Ms. Alexander was facing.

89.     Although Ms. Hamilton was able to alert Deputy Lattimore, she continued with her routine lock down procedure.

90.     Furthermore, Deputy Lattimore was aware of the serious medical needs of Sharon Alexander.

91.     Despite the fact that Deputy Lattimore was aware of the serious medical needs of the decedent, she delayed responding to the cell that Ms. Alexander and Nye Hamilton were housed in, which ultimately led to a delay in getting critical medical attention to Ms. Alexander.

92.     Such delay in getting medical attention for Ms. Alexander amounts to deliberate indifference towards her serious medical needs, and operated to deprive Ms. Alexander of her constitutional rights as guaranteed by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

93.     The defendants' acts of deliberate indifference towards the decedent's serious medical needs, evidence an intent to punish the decedent in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and that said violations are enforceable pursuant to 42 U.S.C.S. § 1983.

94.     The defendants were acting under color of law when they detained the decedent at the Pulaski County Regional Detention Facility.

95.     The defendants, acting under color of law, intentionally, negligently, and with complete and deliberate indifference towards the serious medical needs of the decedent, caused the decedent to be deprived of her constitutional rights including but not limited to the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, by failing to supervise and properly train its staff, and by failing to promulgate an adequate training program designed to eliminate such inadequacies in the operation of its jail, which proximately caused the decedent's death.

96.     At all times herein mentioned, Nurse McCraw was acting in her scope of employment with Turn Key Health Clinics.

VI.
Count Two
Medical Malpractice

97.     The plaintiff incorporates by reference the allegations contained in paragraphs 1-96 of the plaintiff's complaint, and adopts each as if set out herein word for word.

98.     The defendant Turn Key Health Clinics was the contract provider of medical services to Pulaski County, Arkansas.

99.     Upon information and belief, Turn Key Health Clinics began providing medical services to the inmates of the Pulaski County Regional Detention Facility on December 1, 2016.

100.    Turn Key Medical Clinics boast of being "unmatched in our region with the ability to recruit and retain dependable staff for the correctional environment."

101.    Upon information and belief, Nurse McCraw was employed by Turn Key Medical Clinics as an LPN.

102.    Despite the fact that Turn Key Medical Clinics had a contractual obligation to provide medical treatment to pre-trial detainees and post-trial detainees housed at the Pulaski County Regional Detention Facility, it failed to provide such care to Sharon Alexander on the date of December 14, 2016.

103.    Nurse McCraw was well aware of the fact that Ms. Alexander was in need of medical attention.

104.    However, despite this knowledge, Nurse McCraw refused to assess Ms. Alexander's medical needs, and refused to provide medical care to Ms. Alexander.

105.    Furthermore, other employees and or agents of Turn Key Medical Clinics were aware of the medical crisis that Sharon Alexander was facing, but failed to provide medical treatment to her.

106.    This act of refusing to render medical care to Ms. Alexander, was not only negligent, but grossly negligent, and failed below the standard of care that it should have provided, which amounts to a breach of the standard of care that should have been taken by Turn Key Medical Clinics, and its employees and/or agents.

107.    As a direct and proximate cause of the defendants' negligence as well as gross negligence, Ms. Alexander experienced pain and suffering, and ultimately death.

108.    Also, as a direct and proximate cause of the defendants' negligence as well as gross negligence, Ms. Alexander incurred medical and funeral expenses.

109.     In that the defendants acted with gross negligence, the plaintiff is entitled to an award of punitive damages.

V.
Count Three
Wrongful Death

110.     The plaintiff incorporates by reference the allegations contained in paragraphs 1-109 of the plaintiff's complaint, and adopts each as if set out herein word for word.

111.     The defendants' acts of deliberate indifference towards the decedent's serious medical needs were the direct and proximate cause of the decedent's death.

112.     Pursuant to Ark. Code Ann. § 16-62-101, *et seq*., this cause of action can be and is being brought by the plaintiff, the duly appointed Administratrix of the Estate of Sharon L. Alexander, on behalf of herself and the decedent's beneficiaries.

113.     Also, the defendant Turn Key Health Clinics and Nurse McCraw's acts of negligence and gross negligence were the direct and proximate cause of the decedent's death.

114.     Pursuant to Ark. Code Ann. § 16-62-101, *et seq*., this cause of action can be and is being brought by the plaintiff, the duly appointed Administratrix of the Estate of Sharon L. Alexander, on behalf of herself and the decedent's beneficiaries.

115.     On December 27, 2017, an order was entered appointing the plaintiff as the Administratrix of the Estate of Sharon Lavette Alexander.  *See* In Re Sharon Lavette Alexander, Pulaski County Circuit Court No. 60PR-17-2187.

116.     This action is accordingly and properly commenced under the expressed terms of Ark. Code Ann. § 16-62-102(b), which provides that "[e]very action shall be brought by and in the name of the personal representative of the deceased person."

VI.

Damages

117.    The plaintiff incorporates by reference the allegations contained in paragraphs 1-116 of the plaintiff's complaint, and adopts each as if set out herein word for word.

118.    The decedent experienced pain and suffering due to the defendants' act of deliberate indifference towards her serious medical needs, in an amount to be proven at trial.  This amount is recoverable by the plaintiff for purpose of the decedent's estate.

119.    The decedent also incurred medical expenses due to the defendants' act of deliberate indifference towards her serious medical needs, in an amount to be proven at trial.  This amount is recoverable by the plaintiff for purpose of the decedent's estate.

120.    The decedent also incurred funeral expenses due to the defendants' act of deliberate indifference towards her serious medical needs, in an amount to be proven at trial.  This amount is recoverable by the plaintiff for purpose of the decedent's estate.

121.    As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff has experienced mental anguish caused by the more than normal grief that she has experienced as a result of the decedent's death; she is therefore entitled to recover damages for herself in an amount which exceeds $75,000.00, exclusive of interest and costs, the exact amount to which will be proven at trial.

122.    As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Glenroy Charles**, the husband of the decedent, who suffered from mental anguish caused

16

by the more than normal grief that he experienced as a result of the decedent's death.  Mr. Glenroy Charles has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

123.    As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Chacall Charles**, the son of the decedent, who suffered from mental anguish caused by the more than normal grief that he experienced as a result of the decedent's death.  Chacall Charles has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

124.    As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Lexus Charles** the daughter of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Ms. Lexus Charles has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

125.    As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Jamiha Charles** the daughter of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Ms. Jamiha

Charles has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

126.    As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Heaven Charles** the daughter of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Ms. Heaven Charles has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

127.    As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Ja'Niya Charles** the daughter of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Ms. Ja'Niya Charles has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

128.    As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Linda Alexander** the mother of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Ms. Linda Alexander has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

129.     As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Joedy Hill Deadman** the brother of the decedent, who suffered from mental anguish caused by the more than normal grief that he experienced as a result of the decedent's death.  Mr. Joedy Hill Deadman has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

130.     As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Keisha Alexander** the sister of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Ms. Keisha Alexander has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

131.     As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Vonda Alexander** the sister of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Ms. Vonda Alexander has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

132.     As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the

plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Tamara Alexander** the sister of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Ms. Tamara Alexander has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

133.   As a direct and proximate cause of the defendants' act of deliberate indifference towards the decedent's serious medical needs, as well as the defendants' medical negligence, the plaintiff as Administratrix of the Estate of Sharon L. Alexander is entitled to recover damages on behalf of **Broderick Alexander** the brother of the decedent, who suffered from mental anguish caused by the more than normal grief that she experienced as a result of the decedent's death.  Mr. Broderick Alexander has suffered damages in an amount the value of which exceeds $75,000.00, exclusive of interest and costs, the exact amount of which will be proven at trial.

134.   The acts of the defendants in depriving the decedent of her constitutional rights, were done with reckless and/or deliberate indifference, as well as gross negligence, making an award of punitive damages appropriate.

<u>JURY DEMAND</u>

135.   The plaintiff requests that this matter be tried before a fair and impartial jury of twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above described acts of deliberate indifference towards the decedent's serious medical needs, and for the acts of medical negligence:

a)      judgment declaring that the defendants' acts of deliberate indifference, as set forth above, violated the rights of Sharon L. Alexander as secured by the Fifth and Fourteenth Amendments to the United States Constitution;

b)      compensatory damages to the plaintiff both individually and as Administratrix of the Estate of Sharon L. Alexander;

c)      compensatory damages to the plaintiff as Administratrix on behalf of the beneficiaries of Sharon L. Alexander;

d)      punitive damages;

e)      attorney's fees as provided by 42 U.S.C.S. § 1988;

f)      the plaintiff's cost in prosecuting this claim; and

g)      such further relief and additional relief that the Court deems appropriate herein.

Respectfully submitted,

PORTER LAW FIRM
The Catlett-Prien Tower Building
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

By: /s/Austin Porter Jr.
    Austin Porter Jr., No. 86145

Dated this 27th day of February 2018.